725 So.2d 271 (1998)
Ex parte The KENNETH D. McLEOD, Sr., FAMILY LIMITED PARTNERSHIP XV, an Alabama limited partnership; and G. Monroe McLeod.
(In re Katie N. McLeod
v.
The Kenneth D. McLeod, Sr., Family Limited Partnership XV, and G. Monroe McLeod.)
1970102
Supreme Court of Alabama.
July 17, 1998.
Rehearing Denied October 16, 1998.
Thomas W. Underwood, Jr., of Chason & Underwood, P.C., Foley, for petitioners.
W. Donald Bolton, Jr., Foley; and Fred K. Granade and Russell J. Watson of Stone, Granade & Crosby, P.C., Bay Minette, for respondent.
*272 PER CURIAM.
The issue on this certiorari review is whether a new trial is required when a trial judge fails to disclose to a party before her court a campaign contribution made to her by the opposing party. The Court of Civil Appeals held that the trial judge in this case had a duty to disclose the contribution to the noncontributing party and ordered a new trial based on her failure to meet that obligation. We reverse.
On October 2, 1995, Katie McLeod filed a complaint against the Kenneth D. McLeod, Sr., Family Limited Partnership, seeking a partition and sale of certain real property that had been transferred to the partnership by her former husband, Monroe McLeod. On January 24, 1996, she amended her original complaint to name Monroe McLeod as a defendant. On February 23, 1996, Monroe McLeod contributed $200 to the trial judge's campaign for election to a state appellate court. The trial judge subsequently included this contribution in the "Summary of Contributions and Expenditures" she filed with the secretary of state on April 17, 1996, pursuant to the Fair Campaign Practices Act, Ala. Code 1975, §§ 17-22A-1 to -23. On April 1, 1996, Monroe McLeod answered and filed a counterclaim against Katie McLeod. The case was tried without a jury, in September 1996. On November 23, 1996, the trial court ordered that the property be partitioned and divided equally between Katie McLeod and Monroe McLeod and also awarded Monroe McLeod $47,222.70 on his counterclaim. Katie McLeod moved for a new trial or, in the alternative, to alter, vacate, or amend the judgment. Her motion was based in part on the campaign contribution made by Monroe McLeod while the case was pending. The trial court denied her motion.
Katie McLeod appealed to the Court of Civil Appeals. On appeal, she asserted that she did not learn of the contribution until after the judgment had been entered. The Court of Civil Appeals refused to determine whether the trial judge should have recused herself from the case. Instead, it ruled that the trial judge should have at least disclosed to Katie McLeod the campaign contribution. According to the Court of Civil Appeals, the fact that the trial judge accepted a contribution from a party may or may not have warranted recusal, but her failure to disclose the contribution at a minimum "appears to create a perception of `potential bias or a lack of impartiality' on her part." McLeod v. Kenneth D. McLeod, Sr., Family Limited Partnership XV, 725 So.2d 268 (Ala.Civ.App. 1997). The Court of Civil Appeals reversed and ordered a new trial, holding that, in the face of such an appearance of impropriety, the trial judge should have granted Katie McLeod's post-trial motion.
We granted certiorari review on the petition of the McLeod Partnership and Monroe McLeod. At the outset of our analysis, we note that the trial court is vested with great discretion in ruling on a new trial motion. The trial court's ruling on a new trial motion should not be disturbed on appeal unless the trial court violated some legal right of the parties or abused its discretion. Everett v. Everett, 660 So.2d 599 (Ala.Civ. App.1995). The Court of Civil Appeals held that this case presented an abuse of discretion on the part of the trial judge that required a new trial. We conclude, however, that no abuse of discretion occurred, and we reverse the judgment of the Court of Civil Appeals.
While the Court of Civil Appeals declined to hold that the trial judge should have recused herself from hearing the case, it analyzed the standards governing recusal and interpreted them to impose a duty to disclose. This duty, it reasoned, flowed from the effects of nondisclosure on Katie McLeod. It held that the trial judge's failure to directly disclose to Katie McLeod the contribution effectively deprived her of the opportunity to seek the judge's recusal. Because Katie McLeod was thus deprived of the right to file a recusal motion, the Court of Civil Appeals held, the judge's actions amounted to an appearance of bias or of a lack of impartiality and required a new trial.
We find this analysis to be flawed. The trial judge's failure to directly disclose to Katie McLeod the contribution in no way deprived Katie McLeod of the opportunity to move for recusal. The contribution made by *273 Monroe McLeod, along with all other contributions received by the trial judge in her campaign, was a matter of public record. By obtaining a copy of the trial judge's disclosure form, Katie McLeod easily could have learned that Monroe McLeod had made a campaign contribution to the judge hearing her case. It was no secret that the trial judge was campaigning for statewide office while this action was pending. It is certainly no secret that political campaigns are largely financed through the contributions of private persons. By securing a copy of the judge's disclosure form from the secretary of state's office, Katie McLeod or her attorneys could have discovered the contribution and could have used it as a basis for a recusal motion. We believe that these circumstances were sufficient to put Katie McLeod on notice that grounds for a recusal motion might exist and to impose on her a duty to inquire into the public record so that she could determine if such grounds were in fact present.
For whatever reason, Katie McLeod and her counsel chose not to pursue such an inquiry for some time. Four months elapsed from the time the contribution was made public until the case was tried. In this time, Katie McLeod and her attorneys apparently made no attempt to discover any possible campaign contributions made by Monroe McLeod. Seven months elapsed from the time the trial judge disclosed the contribution until she entered the judgment in the case. Again, Katie McLeod apparently did nothing to investigate any possible grounds for recusal. It was only after eight months had expired that Katie McLeod raised the issue to the court in a Rule 59, Ala.R.Civ.P., post-judgment motion. Katie McLeod, in essence, asks us to insulate her from her failure to exercise reasonable diligence in the presentation of her cause. It was not the place of the Court of Civil Appeals, and it is not our place now, to protect any party who sleeps on her rights.
We would also note that the trial judge not only did not abuse her discretion by denying the Rule 59 motion, but that she was affirmatively correct in denying it. The post-judgment motion stated only that "In addition, a review of the summary of contributions and expenditures of the trial judge [in her campaign] indicates that the defendant G. Monroe McLeod donated money to the trial judge on February 23, 1996 during the pendency of this action." Katie McLeod apparently was requesting a new trial based on newly discovered evidence suggesting that the trial judge perhaps could have been biased in favor of Monroe McLeod.[1] To succeed on this motion, Katie McLeod had to show not only that the campaign contribution was discovered after trial, but also that it could not have been discovered before trial by the exercise of due diligence. Adams v. State, 428 So.2d 117 (Ala.Civ.App.1983). She failed to meet both of these requirements. The record contains no evidence showing that Katie McLeod did not discover the evidence of a contribution until after the trial. As we have said, Monroe McLeod's campaign contribution unquestionably could have been detected before the trial. Thus, Katie McLeod also failed to demonstrate that the contribution could not have been discovered with a diligent inquiry.
Furthermore, we believe that the opinion of the Court of Civil Appeals would wrongly expand the duties of judges and would place an unreasonably heavy burden on the judiciary. While we share the concern of the Court of Civil Appeals that public confidence in the judicial system should be upheld and judicial integrity zealously protected, we do not believe judicial ethics mandate such a burden of direct disclosure as the Court of Civil Appeals would impose. If a judge failed altogether to publicly disclose the contributions she had received, or if she actively concealed them, then an appearance of impropriety would exist. But the judge in this case publicly reported the contribution and in no way attempted to cover up the fact that Monroe McLeod had made a contribution to her. When a judge has actual knowledge that a party before her has contributed to her, then, ideally, she should make this *274 fact known to the parties. The Court of Civil Appeals, 725 So.2d at 270, cites the example of a judge who did disclose a contribution made to him by a party. See Ex parte Bryant, 675 So.2d 552 (Ala.Crim.App.1996). We would encourage judges to follow this example when they are personally aware that a party to a proceeding has contributed to their campaigns, but this example is only an ideal, not a requirement imposed by law.
The practical ramifications of the Court of Civil Appeals' decision are that a judge would have to daily check her docket against her list of campaign contributors and, if the judge found that in a particular case one party or both parties had contributed to her, then she would have to inform the parties so that they, or one of them, could file a recusal motion. In 1996, the circuit judges in Alabama decided an average of 1,382.2 cases each, according to the Annual Report of the Alabama Judicial System. That number rose to 1,405.5 cases per circuit judge in 1997. To expect a judge to remember each contribution she has received and to disclose it if the contributor comes before her court strikes us as somewhat unrealistic. To require a new trial every time a trial judge fails to make such a disclosure would be, at best, unrealistic and, at worst, a waste of judicial resourcesparticularly when that information is readily available to the parties.
It is significant to note that the Alabama Legislature has refused to impose such a burden on the judiciary. In 1996, the Legislature attempted to deal with the question of judicial campaign contributions, by adopting § 12-24-1 and § 12-24-2.[2] Through this legislation, the burden of disclosing a campaign contribution has been placed on the donor partythe party who can most easily carry this burden and carry it at the least cost. Section 12-24-2(b), Ala.Code 1975. A judge, on the other hand, is required only to publicly file a statement of contributions with the secretary of state. Section 12-24-2(a), Ala.Code 1975. The burden imposed by the Court of Civil Appeals goes beyond even that imposed by the Alabama Legislature.[3]
We cannot justify creating for trial judges a duty of direct disclosure when an inquiry by the party would accomplish the same end. We conclude that a new trial was not required by the trial judge's failure to disclose the campaign contribution she had received from Monroe McLeod. Considering the lack of diligence on Katie McLeod's part and the lack of any evidence of bias on the trial judge's part, we think the request for a new trial on the basis of the contribution even borders on the frivolous.
Because the trial judge did not abuse her discretion by denying the motion for a new trial, the Court of Civil Appeals erred in reversing the judgment. Accordingly, we reverse the judgment of the Court of Civil Appeals and direct that court, on remand, to reinstate the judgment of the trial court.
REVERSED AND REMANDED.
HOOPER, C.J., and HOUSTON and SEE, JJ., concur.
MADDOX, J., concurs specially.
COOK and LYONS, JJ., concur in the result.
SHORES, J., dissents.
MADDOX, Justice (concurring specially).
I agree that the trial judge in this case was under no duty to disclose to the wife that the husband had given the judge a $200 campaign contribution.
Because Alabama continues to elect its judges in partisan elections, campaign contributions *275 to judicial candidates have been the subject of much public concern and public debate. The record, in my opinion, shows that the trial judge timely disclosed the fact of the contribution, on a report that the law required her to file with the secretary of state. Although a copy of this report was not filed in the county where the case was pending, there was no legal requirement for such a filing.
The public and litigants have a legitimate interest in knowing who makes contributions to a judicial candidate and in knowing the amount of such contributions, but the present laws regulating the reporting of contributions are sufficient, I believe, to guarantee adequate notice to the public and litigants of such contributions. In view of the fact that it is undisputed that the trial judge reported the contribution as required by law, I do not believe she was under any further duty, under the particular facts of this case, to disclose the $200 contribution or to recuse herself because of it.
NOTES
[1] We note that Katie McLeod presented no evidence that the trial judge was in fact biased by Monroe McLeod's campaign contribution. She also offered no proof in support of her Rule 59 motion to show that the contribution had created even an appearance of bias.
[2] Although this legislation became effective on January 1, 1996, it is inapplicable to the present case. The contribution at issue in this present case was made for an upcoming election. The disclosure provisions of § 12-24-2 apply only to contributions made in the last election. We would also note that "preclearance" of this act by the United States Justice Department is still pending. See Finley v. Patterson, 705 So.2d 834, 835 (Ala.1997).
[3] If and when that Act is cleared by the United States Justice Department, a contributing party will have the burden of disclosing any contributions made to the judge (trial or appellate) in that party's case. Therefore, it would be futile for this Court to impose on judges a duty to disclose contributions when, upon the Justice Department's approval of the new statute, that duty will shift to the contributing parties.